FILED

2012 Feb-01  PM 03:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

BARON SERVICES, INC.,

     Plaintiff,

vs.                                                                  CASE NO. CV-11-J-1606-NE

MEDIA WEATHER INNOVATIONS,
LLC,

     Defendant.

## <u>MEMORANDUM OPINION</u>

As set forth in the court's Order of January 25, 2012, this case came on to be heard on January 24, 2012, on the defendant's motion for summary judgment (doc. 27), the plaintiff's motion for *Markman* hearing (doc. 23), and the plaintiff's motion to compel (doc. 37).[1]  Both counsel for plaintiff and counsel for defendant were present.  In open court and on the record, the court heard oral argument on the pending motions.  Having considered said motions, responses and replies filed in support of and in opposition to said motions, as well as all of the evidence properly

---

[1] All of these motions have been fully briefed.  The court also has before it the defendant's response to the plaintiff's motion for a *Markman* hearing (doc. 25), and plaintiff's reply (doc. 26), as well as defendant's brief and evidence in support of its motion for summary judgment (doc. 28), plaintiff's response (doc. 36), and defendant's reply (doc 40).  Additionally, the plaintiff's motion to compel (doc. 37) generated multiple evidentiary submissions from plaintiff (doc. 38), as well as defendant's response submitted after the hearing (doc. 44).

submitted and received to date, the court makes the following findings of fact and rulings of law:

## FACTUAL BACKGROUND

Plaintiff asserts it is a leading company in weather detection and forecasting technologies and has many patents, including Patent No. 6,490,525[2] (the "525 Patent"). Complaint, ¶¶ 5, 8. Plaintiff further alleges that it "owned the '525 Patent throughout the period of MWI's infringing acts...." *Id.*, ¶ 9. Plaintiff claims that defendant has a service called "WeatherCall" in which subscribers are notified through various means that severe weather is in a certain area registered by the subscriber. *Id.*, ¶ 10. Plaintiff claims that through the WeatherCall service:

> MWI has been and still is, infringing, inducing infringement, and contributing to the infringement of the '525 Patent by making, using, selling, offering to sell, or otherwise distributing systems and methods for distributing real-time, site specific, weather information, including but not limited to, MWI's Weather Call product and services, that embody the Baron Services patented invention.

Complaint, ¶ 11.

This non-specific allegation is the extent of plaintiff's infringement claim. At a minimum, a complaint should "give the defendant fair notice of what the plaintiff's

---

[2]The parties do not dispute that this is a process patent. "Process" means "process, art or method, and includes a new use of a known process, machine, manufacture, composition of matter, or material." 35 U.S.C. § 100(b).

claim is and the grounds upon which it rests." *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007) (citing *Conley v. Gibson*, 355 U.S. 41,47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555*, citing Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). The court questions whether plaintiff's complaint ever met such a standard. However, the defendant opted to challenge plaintiff's "bare bones" complaint through the use of a motion for summary judgment rather than through a motion to dismiss.[3]   Assumably to shed light on what the plaintiff claims, attached

---

[3]Just as nebulous were plaintiff's counsel's answers to the court when questioned about what the plaintiff's product actually is. In response to the court's inquiry, the following explanation was provided by plaintiff's counsel:

MR. HALL: I think as to whether there is infringement by MWI's product, our product and what it does and how it operates does not affect the infringement analysis. What our product does does become pertinent to the element of damages as to whether we have lost profits for largely having a product that their use of their product took sales away from us that is also covered by the product. That's one reason why at this point in time that has not been a point of discovery or in the pleadings.

THE COURT: Now, I'm going to stop you right here because you said .... that under your patent you receive information, you process it, you determine the remote units, you distribute to the remote unit the information that is applicable, information about that area, then you distribute that. Now, how can you say – ...

THE COURT:   ... How can you say, Mr. Hall, that your claim that they are infringing on this has nothing to do with your product, if that's what your patent does? You can't just have a patent in the abstract. I assume you are going to have to – to even file a lawsuit  – if you have not been damaged, you know.

MR. HALL: I agree, and I'm sorry if I misconstrued it. As to if – there's a difference between our patent which we have to construe the claims of those patents

3

to the complaint as Exhibit 1 is a copy of the plaintiff's patent.  The Patent Abstract

explains the plaintiff is patenting

> A system for providing real-time site specific weather information compris[ed of] a weather alert manager that receives meteorological data and combines the meteorological data with a geographical grid covering a predefined geographic area to produce a storm profile for the storms within the geographical area, wherein the geographic grid partitions the geographic area into a plurality of cells....

Exhibit 1 to complaint.  Within its "Summary of the Invention," the plaintiff's patent

makes clear that

> In accordance with another embodiment of the present invention, a method for providing real-time site specific weather information comprises the steps of receiving meteorological data, and combining the meteorological data with a geographical grid covering a predefined geographic area to produce a storm profile for the storm identified in the meteorological data, wherein the geographic grid partitions the geographic area into a plurality of cells.  The method also includes the step of distributing the storm profile to a remote unit that is responsive to the storm profile for presenting real-time site specific weather information.... The method may also include the step of providing a

---

and apply their product to our patent, as to our product, whether our product is covered by our patent is a separate analysis that is impacted as to when you are primarily focusing on damages.

Hearing Record ("HR") 29-30.

The court finds no basis for plaintiff's counsel's refusal to identify a product associated with this patent.  As other courts have recognized, "knowledge of that product or process provides meaningful context for the first step of the infringement analysis, claim construction." *Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322, 1326-1327 (Fed.Cir.2006). Similarly, in *Typhoon Touch Technologies, Inc. v. Dell, Inc.*,  659 F.3d 1376, 1383 (Fed.Cir.2011), the Court stated that while "[i]t is not inappropriate for a court to consider the accused devices when construing claim terms, for the purpose of 'claim construction' is to resolve issues of infringement, that is not the same as requiring a court to ignore all knowledge of a product. *Id.,* citing *Pall Corp. v. Hemasure Inc.*, 181 F.3d 1305, 1308 (Fed.Cir.1999).

> severity indicator of said storm as a part of said meteorological data. Further, the step of combining said meteorological data with a geographic grid covering a predefined geographic area includes predicting a path of the storm based upon the meteorological data.

*Id. See also* FIG. 4 and 5 (reflecting prediction component of plaintiff's process).

Claim 1 of the patent breaks the plaintiff's system down into the following respective parts:

> 1.  A system for providing weather event notifications, comprising:
> memory for storing contact identifiers that identify a plurality of remote units; and
> logic configured to make a determination as to whether one of said contact identifiers identifies at least one of said remote units that is located within a geographic region of an impending weather event, said logic further figured to transmit, if said logic determines in said determination that said one contact identifier identifies a remote unit located within said geographic region, a signal to the at least one remote unit based on said one contact identifier thereby enabling the at least one remote unit to notify a user within said geographic region of said impending weather event.

*Id.*

The defendant has adamantly denied that its service infringes on the plaintiff's patent.  The defendant draws the distinction that whereas plaintiff's patent concerns technology that sends severe weather warnings based on its subscribers' location, the defendant's service sends severe weather warnings to its subscriber based on a predetermined location designated by the subscriber, and regardless of whether the

5

subscriber is presently within the designated warning area.  *See e.g.*, affidavit of Michael Fannin (doc. 41-2).

The plaintiff responds that defendant's service must entail more than just monitoring the National Weather Service's warnings and forwarding the same to subscribers who have designated locations within the warnings.[4]  Specifically, during oral argument, plaintiff's counsel noted that defendant states it distributes National Weather Service ("NWS") warnings "[w]ithout analysis or manipulation..."  Hearing Transcript ("HR"), at 6, 14.   Counsel for plaintiff admitted that "just getting

---

[4]The parties do not dispute that defendant's customers are generally individuals.  When the court inquired as to whom subscribes to the plaintiff's services, the answer was much more convoluted.  Plaintiff's counsel argued:

– the service can be offered one of two ways:  It can be offered through a television station to its end subscribers, so that in context it is being offered to subscribers of, say, WBRC.  So they come through WBRC to receive the service, but the end receiver is the subscriber, the consumer.  Or they can come directly to Baron Services if, say, for example, the television station does not have an arrangement with Baron Services, and can get that directly from Baron Services, at which point it is, again the end user or customer that gets the alerts.
....

THE COURT: You're not saying that the TV station has to have a contract with me to provide me that weather information?

MR. HALL: No Your Honor.  What I'm saying is that one of the ways that this gets offered through end consumers is the television station is the one that has the relationship already with its viewers.  So they may choose to have an arrangement with Baron Services that says I want to make this service available.

THE COURT: I understand that.  Okay.  But are you also saying that Baron Services has individuals, individual people as customers?

MR. HALL: Yes, I believe that is the case. I am not 100 percent certain, but I do believe that they have some consumers that come directly to them through their Web site that can sign up for SAF-T-Net service.  I believe that is the case.

HR 30-32.

information from the National Weather Service and just passing it along without analysis, without manipulation, without doing any of the things that they say they do [in other documents], would not be an infringement of the patent." HR 21.

In essence, the plaintiff asserts the defendant is lying when defendant alleges that its service merely forwards alerts from the NWS to its paying customers who have designated an address within the alert area.   Plaintiff's counsel stated "They have no point in even having a product if all they do is just pass it right along without any analysis, without any manipulation whatsoever; there is no basis for having it.... But there's a source code that tells that.  There's a source code out there that tells what they do.  And we do, before this Court rules on summary judgment, ask for an opportunity to see it, to test it, to determine whether what they say is exactly the way it operates or not." HR 16-18.

The plaintiff has repeatedly expressed its belief of entitlement to the defendant's source code.  In addition to the plaintiff's pending motion to compel production of defendant's source code[5] (doc. 37), and plaintiff's previously submitted

---

[5]In that motion, the plaintiff alleges that

claim 1 of the '525 Patent (an apparatus claim) recites "logic" configured to make certain determinations and to take certain actions.  In the context of a computer system, such as that used by MWI, this "logic" IS the source code.  The determinations and actions are carried out by the computer systems as instructed by the source code.....  At its core, MWI's source code is not only relevant evidence of how MWI actually implements and provides its weather event notifications, but is likely the best evidence.

requests for production for the source code (on which the court granted defendant's motion for relief (docs 18 and 22)); the plaintiff again raised its "need" for defendant's source code at the hearing.  HR at 6-7.  The plaintiff alleges without access to the defendant's source code, it cannot dispute that defendant's service does just what the defendant claims it does.  Plaintiff's counsel told the court "we are not obligated to simply take their word for it.  We ought to be given an opportunity for some discovery to see whether it is correct or incorrect."  HR 15-16.  Later plaintiff's counsel reiterated "we should have an opportunity to test what is said in the affidavit before the Court grants summary judgment."  HR 21.  Plaintiff's counsel continued that

> there is a lot of argument about the details of other aspects of things that they are wrong, but we believe that the source code will establish that they are – that will establish exactly – what we now have is a belief based upon what we see, based upon how they present their product, based upon what they say their product does.  We have a well-founded belief that they are infringing, but we've not analyzed through the source code their product.  But their source code is not in keeping – what they say they do is not in keeping with what the document says that they do.

HR 23-24.

Additionally, the plaintiff states the court cannot even consider whether the defendant's service infringes on the plaintiff's patent until the court holds a *Markman*

---

Plaintiff's motion to compel (doc. 37), at 7.

hearing[6] to construe the claims of the patent, even though the plaintiff has refused to provide any definition of its claims to the defendant.  The plaintiff has repeatedly stated such an undertaking is solely for the court.  Plaintiff's counsel argues "we haven't had an opportunity for the Court to construe the claims.  It's a matter of law. You get that opportunity to construe the claims.  And you may say, after you construe the claims.... I don't agree with your construction...."  HR 21-22.

## STANDARD OF LAW

Where the nonmoving party bears the burden of proof at trial, the moving party may discharge this "initial responsibility" by showing that there is an absence of evidence to support the nonmoving party's case or by showing that the nonmoving party will be unable to prove its case at trial. *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437-38 (11th Cir.1991).   The party moving for summary judgment has the burden of proving that: (1) there is no genuine issue as to any material fact, and (2) it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in the light most favorable to the party opposing the

---

[6]*Markman v. Westview Instuments, Inc.*, 517 U.S. 370, 116 S.Ct. 1384 (1996).  In *Markman*, the Court held construction of the term "inventory" as that term was used in the plaintiff's patent, was a matter of law for the court to decide. *Id.,* 517 U.S. at 391.

motion and resolves all reasonable doubts against the moving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255, 106 S.Ct. 2505, 92 L.Ed.2d 202 (1986).  The court may not weigh conflicting evidence or weigh the credibility of the parties. *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir.1993).  If a reasonable fact finder could draw more than one inference from the facts and that inference creates an issue of material fact, a court must not grant summary judgment.  *Id*.  On the other hand, summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp*., 477 U.S. at 322.  In addition, when a claimant fails to produce "anything more than a repetition of his conclusory allegations," summary judgment for the movant is "not only proper but required." *Morris v. Ross,* 663 F.2d 1032, 1034 (11th Cir.1981).

Rule 56, Fed.R.Civ. Pro., requires that if facts are unavailable to a nonmovant, and a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may defer considering the motion or deny it, or allow time to obtain affidavits, or declarations or take discovery.  Rule 56(d), Fed.R.Civ.Pro.

Summary judgment on the issue of infringement is proper when no reasonable jury could find that every limitation recited in a properly construed claim either is or

is not found in the accused device either literally or under the doctrine of equivalents. *PC Connector Solutions LLC v. SmartDisk Corp.*,  406 F.3d 1359, 1364 (Fed.Cir. 2005); citing *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353-54 (Fed.Cir. 1998).  The Federal Circuit has held that "summary judgment is as appropriate in patent case as in any other ...." *Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*, 731 F.2d 831, 835 (Fed.Cir.1984).

## LEGAL ANALYSIS

*Defendant's Summary Judgment Motion* (doc. 28):

Summary judgment is appropriate in patent infringement suits when it is apparent that only one conclusion regarding infringement could be reached by a reasonable jury. *See Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1323 (Fed.Cir.2001).  The Federal Circuit has expressly stated that the "patent owner has always borne the burden of proving infringement." *Wilson Sporting Goods Co. v. David Geoffrey & Assocs.*, 904 F.2d 677, 685 (Fed.Cir.1990). Thus, "[s]ince the ultimate burden of proving infringement rests with the patentee, an accused infringer seeking summary judgment of non-infringement may meet its initial responsibility either by providing evidence that would preclude a finding of infringement, or by showing that the evidence on file fails to establish a material issue of fact essential to the patentee's case." *Novartis Corp. v. Ben Venue Labs.*, 271 F.3d 1043, 1046

(Fed.Cir.2001). "Nothing more is required than the filing of a summary judgment motion stating that the patentee had no evidence of infringement and pointing to the specific ways in which accused systems did not meet the claim limitations." *Exigent Tech., Inc. v. Atrana Solutions, Inc.*, 442 F.3d 1301, 1309 (Fed.Cir.2006). Once the movant has satisfied its initial burden, the "burden of production then shift[s] to [the non-movant] to identify genuine issue that preclude summary judgment." *Optivus Tech., Inc. v. Ion Beam Applications S.A.*, 469 F.3d 978, 990 (Fed.Cir.2006). The party opposing the motion must point to an evidentiary conflict created on the record at least by a counter statement of a fact or facts set forth in detail in an affidavit by a knowledgeable affiant. Mere denials or conclusory statements are insufficient. *Barmag Barmer Maschinefabrik AG*, 731 F.2d at 836.

In the facts before this court, the plaintiff has sought to turn this standard on its head. Since this action was filed, the plaintiff has repeatedly asserted, in a variety of ways, that since it has accused the defendant of infringing its patent, the defendant must be compelled to produce its source code to prove defendant does not infringe. As stated previously, plaintiff's counsel represented to the court "we are not obligated to simply take their word for it. We ought to be given an opportunity for some discovery to see whether it is correct or incorrect..." HR 15-16. Later plaintiff's

counsel reiterated "we should have an opportunity to test what is said in the affidavit before the Court grants summary judgment."  HR 21.

The plaintiff's patent on the system described is entitled to a presumption of validity.  *See e.g., Atari Games Corp. v. Nintendo of America, Inc*., 975 F.2d 832, 839 (Fed.Cir.1992) (Patent law "provides protection for the process or method performed by a computer in accordance with a program").  The plaintiff is also entitled to a presumption that its claim of infringement against the defendant is made in good faith.  *Brooks Furniture Mfg., Inc. v. Dutailier Intern., Inc*., 393 F.3d 1378, 1382 (Fed.Cir.2005).

Defendant has not challenged the validity of the plaintiff's patent.  Rather, the defendant alleges its product does not infringe on the plaintiff's patent at all.  Thus, to prevail on its claim of patent infringement, the plaintiff must establish by a preponderance of the evidence that the accused device infringes one or more claims of the patent either literally or under the doctrine of equivalents.[7]  *Amgen Inc. v. F. Hoffman–LA Roche Ltd.*, 580 F.3d 1340, 1374 (Fed.Cir.2009).  Infringement, both literal and under the doctrine of equivalents, is a question of fact.  *Insituform Techs.,*

---

[7]At the hearing, the plaintiff referred to the doctrine of equivalents, particularly in the context of faulting the defendant for not raising the same.  *See e.g.*, HR 23.  To date, the plaintiff has never plead such a claim, or even specified a particular manner in which the defendant is alleged to infringe on the plaintiff's patent.  Rather, the plaintiff has relied solely on its bare bones complaint.  This, coupled with plaintiff's repeated insistence that it must be provided the defendant's source code before this case can proceed, causes the court to question whether plaintiff's case is no more than the proverbial fishing expedition.

*Inc. v. Cat. Contracting, Inc.*, 161 F.3d 688, 692 (Fed.Cir.1998). To literally infringe a claim, "every limitation set forth in [the] claim must be found in an accused product, exactly." *Southwall Tech., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed.Cir. 1995); *Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1247 (Fed.Cir. 2000). Additionally, "[a] finding of infringement under the doctrine of equivalents requires a showing that the difference between the claimed invention and the accused product or method was insubstantial or that the accused product or method performs the substantially same function in substantially the same way with substantially the same result as each claim limitation of the patented product or method." *AquaTex Indus., Inc. v. Techniche Solutions, Chem. Co.*, 479 F.3d 1320, 1326 (Fed.Cir.2007) (internal citations omitted).[8]

The defendant asserts its accused product is really quite simple: It takes relevant NWS notifications and forwards them to its paying customers. *See e.g.*, defendant brief in support of summary judgment, at 2. Plaintiff admits that merely

---

[8]To prevail under the doctrine of equivalents, the patent-holder must show that the accused device lacks an element contained in the invention, but substitutes some other element that performs substantially the same function in substantially the same way to achieve substantially the same result. *Graver Tank & Mfg. Co., Inc. v. Linde Air Prods. Co.*, 339 U.S. 605, 608, 70 S.Ct. 854, 94 L.Ed. 1097 (1950). Specifically, "[e]ach element contained in a patent claim is deemed material to defining the scope of the patented invention, and thus the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole." *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997); *accord Vehicular Tech. Corp. v. Titan Wheel Int'l, Inc.*, 141 F.3d 1084, 1089-90 (Fed.Cir.1998). For reasons explained herein, the court is of the opinion that even if plaintiff asserted an equivalents argument, the same would be futile.

14

downloading the NWS notifications and alerts for severe weather are not in violation of the plaintiff's patent. *See e.g.*, HR at 12; plaintiff's response to defendant's discovery requests, no. 15 (doc. 25, exhibit C at 46).[9]   Because the defendant states this is all it does, and because the plaintiff admits such actions do not infringe its patent, it claims it is entitled to summary judgment in its favor.[10]   Defendant's brief

---

[9]The defendant's request for admission states in full: "Admit that a National Weather Service warning which does not contain a 'storm profile' as that term is used in the '525 Patent, does not infringe the '525 Patent." Doc. 25, exhibit C at 46.  Clearly, this request could have been answered with a simple "admitted" or "denied." While the court is sure that plaintiff's response was offered in good faith, it is indecipherable.  Most notably, the plaintiff relies on its request for a hearing and the timetable offered by it ***that was never adopted by the court*** as a reason it does not have to respond to discovery.  The plaintiff did not address the fact that the requests for admission, as well as the remainder of the discovery propounded by the defendant were all in accordance with the Scheduling Order ***actually entered by this court***.

In full, the plaintiff's response to this Request for Admission reads as follows:

> **RESPONSE**: Baron objects to the request on the basis that it is premature in light of the Markman timetable proposed for entry by the Court.  Subject to the following objections, Baron will provide the appropriate responses in accordance with the proposed schedule and the Patent Rules.  Baron further objects because the Court's claim construction, if appropriate for "storm profile", will determine, as a matter of law, whether a National Weather Service warning contains a storm profile under the '525 Patent.  Baron further objects to the request as overly broad, unduly burdensome, and not reasonably calculated to the discovery of admissible evidence because "storm profile" is not used in the claims of the '525 Patent.  Baron further objects to the request as vague and ambiguous without specific reference to which part of the '525 Patent the request refers to.  Baron also objects to the request as vague and ambiguous in its use of "National Weather Service warning".  Baron further objects to the request as based on an application of law to a hypothetical set of facts.
> **Subject to and without waiving the foregoing objections, Baron is without sufficient information to know how the Court will define, if appropriate, "storm profile" or "National Weather Service warning", and thus the request is denied.  Baron admits that information from the National Weather Service alone, including a "warning", does not infringe the '525 Patent.**

(emphasis added).  Thus, defendant has admitted that a warning from the NWS does not infringe its patent, and in the same breath denied that a warning from the NWS does not infringe its patent, and in between alleged that the question was untimely, overly broad, unduly burdensome, vague, ambiguous, and up to the court to determine as a matter of law.  In its reply to defendant's response to plaintiff's motion for a *Markman* hearing (doc. 26), the plaintiff asserts it has provided defendant with "appropriate and substantive" responses to all of its discovery requests."  See doc. 26, at 2.

[10]*See e.g.*, H.R. at 37-38:

in support (doc. 28) at 5-6. This is sufficient to make the plaintiff produce some evidence of the facts necessary for its case. See e.g., *Exigent Technology, Inc. v. Atrana Solutions, Inc*., 442 F.3d 1301, 1308-1309 (Fed.Cir.2006) ("nothing more is required than the filing of a summary judgment motion stating that the patentee had no evidence of infringement and pointing to the specific ways in which accused systems did not meet the claim limitations.")

Defendant supports its allegation that it does not infringe plaintiff's patent by way of an affidavit from its president, Valerie Sanders Ritterbusch (submitted as exhibit A to defendant's brief in support). In her affidavit, Ritterbusch states that defendant's products and services

> only transmit National Weather Service warnings to members of the public who subscribe to MWI's services. MWI does not engage in any analysis or manipulation of the National Weather Service warnings it transmits to its customers. MWI does not gather weather-related data from any source. MWI does not analyze, interpret or manipulate any information obtained from the National Weather Service."[11]

---

The underlying fault of this case, absolute underlying fault with Baron's patent is – the National Weather Service obviously is an organization of the national Government, funded for by taxpayer dollars. Its mission and role is to provide National Weather Service alerts to save people's lives. It's in the public domain. We pay for it. And Baron through its patent is trying to prohibit Media Weather for that matter the National Weather Service from transmitting their own warnings. That's illegal. It's contrary to public policy. You cannot try to monopolize through a patent information that's in the public domain...

[11]Not surprisingly, plaintiff sought to have the court strike this affidavit, on the ground that it was "replete with conclusions of law." *See* motion to strike (doc. 33) at 2. The plaintiff argues that the statements were also opinions regarding technical operations of the defendant and nothing in the affidavit suggested the affiant had a technical background. *Id*., at 7. The court notes in the

Exhibit A to defendant's brief.

As previously stated, the parties agree that information from the National Weather Service, in and of itself, is within the public domain and does not infringe on plaintiff's patent.  In essence, defendant argues that plaintiff is attempting to control who may disseminate this information.  Information which is available to the public, and not a trade secret nor protected by patent, copyright, or some other body of law that creates a broader intellectual property right than trade secrecy does, may be freely used without liability.[12]  See e.g., *ConFold Pacific, Inc. v. Polaris Industries, Inc.* 433 F.3d 952, 959 (7th Cir.2006); *Aronson v. Quick Point Pencil Co.*, 440 U.S. 257, 262, 99 S.Ct. 1096, 59 L.Ed.2d 296 (1979) ("the stringent requirements for patent protection seek to assure that ideas in the public domain remain there for the free use of the public").

The parties do agree that the independent claims in plaintiff's patent are Claims 1, 7, 12, 16, 21, and 26, each of which relate to a process or method of providing weather related notices.  The defendant asserts it infringes none of these claims, and

_____

abstract that many people can understand computer processes without technical backgrounds, and further notes in the specific that the suggestion the president of a company does not know how the company's products work, without more, is an insufficient basis to strike an affidavit.

[12]In contrast to most of the case law on the issue of information in the public domain, the plaintiff here is not seeking to protect its own information in the public domain by way of its patent from use by others.  Rather, the plaintiff seeks to prevent defendant from using the same public information the plaintiff uses for its patented process.  The fact that both parties begin with publically available information does not demand a conclusion of infringement.

thus, cannot infringe the dependent claims either.  Defendant's brief in support of summary judgment, at 8. See e.g.,  *Monsanto Co. v. Syngenta Seeds, Inc.*, 503 F.3d 1352, 1359 (Fed.Cir.2007), citing *Wahpeton Canvas Co., Inc. v. Frontier, Inc.*, 870 F.2d 1546, 1552 (Fed.Cir.1989)("One may infringe an independent claim and not infringe a claim dependent on that claim. The reverse is not true. One who does not infringe an independent claim cannot infringe a claim dependent on (and thus containing all the limitations of) that claim").  When asked to specify which of the patent claims the defendant allegedly infringes, the plaintiff essentially named all of the independent claims, and added that there were some dependant claims as well. HR 18.  However, plaintiff failed to provide any evidence of specific actions, processes or procedures of defendant's product that follow the steps of plaintiff's patent.

Hence, the defendant further asserts it is entitled to summary judgment because the plaintiff has made no allegation and has provided no evidence that defendant's product mimics each step of plaintiff's patent.  For "infringement of a process invention, all of the steps of the process must be performed, either as claimed or by an equivalent step." *EMI Group N. Am., Inc. v. Intel Corp.*, 157 F.3d 887, 896 (Fed.Cir.1998).

Clearly, to infringe the '525 patent, the plaintiff must claim more than transmission of information provided by the NWS, which is within the public domain. From a plain reading of the patent claims, the plaintiff's system uses information from multiple sources to make predictions concerning storms and notify customers within predicted paths of impending severe weather. *See e.g.*, Patent Claims 1, 7, 12, and 16. However, despite repeated opportunities to provide evidence that the defendant's product similarly performs such steps, the plaintiff has failed to do so.[13] Tellingly, although plaintiff had a patent application submitted by defendant, the plaintiff still has not provided evidence, by affidavit or otherwise, that defendant's patent application, for the accused product, infringes on its face on plaintiff's patent.

Upon the defendant's filing of summary judgment, the plaintiff had a duty to come forward with some evidence. *See e.g., Fitzpatrick v. Atlanta*, 2 F.3d 1112, 1116 (11th Cir.1993) ("To survive summary judgment, the nonmoving party bearing the ultimate burden of proof at trial must come forward with evidence sufficient to

---

[13]The court is of the opinion that whether or not defendant's product **predicts** storms, as opposed to reporting the predictions of others, is readily available information that should have been easily available to the plaintiff. Defendant alleged at the hearing that it provided plaintiff thousands of warnings it issued in the prior five to six years. HR at 44. As defendant then represented, the plaintiff has not offered a single one of those warnings as evidence defendant does anything more than monitor NWS alerts and pass relevant ones on to its paying customers. *Id.* The fact that plaintiff believes such a product to be worthless (see HR 16) does not mean that the product must consist of more than what the evidence reflects. Even more telling, the plaintiff did submit the defendant's proposed patent for its WeatherCall service. *See* exhibit 4 to plaintiff's brief in opposition (doc. 36). That proposal describes a system which is exactly as the defendant has represented it to be. *See e.g.*, doc. 36, exhibit 4 at MWI00035-MWI00038.

withstand a directed verdict motion"). The plaintiff has repeatedly refused to do so, asserting instead that this entire case rises or falls on plaintiff's obtaining the defendant's source code. Thus, this court is left solely with defendant's affidavit evidence that defendant only transmits NWS warnings to its customers. Ritterbusch affidavit, exhibit A to defendant's motion (doc. 28-2), ¶ 4. *See also* defendant responses to plaintiff's interrogatories (submitted as doc. 28-3), at p. 3-7).

The defendant has submitted unrefuted evidence that its service does not perform numerous steps of the plaintiff's patent.[14] Rather, by affidavit, the defendant has established that it compares whether an area defined by the NWS includes any addresses provided by its subscribers. Rittenbusch affidavit (doc. 28-2), ¶ 5. The defendant has established that it does not use a geographical area, region, cell, or grid to determine areas to be alerted, but merely passes on alerts from the NWS to its

---

[14]At oral argument, defense counsel again stated that defendant's product takes public information, specifically the NWS warnings and alerts, and sends them verbatim to its subscribers. HR 36-37. Specifically, defense counsel represented that:

> Our source code [takes latitude and longitude of affected areas from NWS] automatically. And it doesn't really even read it. What it does, it pulls it out. It cuts and pastes it, puts it into the program, and then we have a program that automatically, arithmatically, if you will, compares the latitude and longitude of the warning area to the latitudes and longitudes of all the addresses of our subscribers. And those that are within that polygon get a warning automatically, and those that are outside of it don't.
>
> The warning itself is simply a recitation of what the National Weather Service has issued. It's verbatim. In some instances it's recorded. We can actually make a phone call to your home and you get a recorded voice of a local television celebrity or somebody that you would recognize that says the National Weather Service has issued a warning; turn on your television. That's all it says. It doesn't tell you even the area on a voice recorder.

HR 36-37.

subscribers.  *Id.*  The plaintiff has offered nothing more than its postulation that

defendant's service must do something more than that because of its counsel's belief

no one would pay for defendant's service as described.  Such postulation fails to

create a genuine issue of material fact concerning defendant's product.[15]

---

[15]In its response to the defendant's motion for summary judgment, the plaintiff asserts it did not file a Rule 56(d) motion because it did not have too.  Brief in opposition at 19.  The plaintiff then excuses its failure to file a motion pursuant to Rule 56(d), stating the same is not necessary in the Eleventh Circuit.  *Id.*  However, unlike the cases on which it relies, plaintiff did not ask for more time to complete discovery.  Rather, plaintiff told this court it had to hold a *Markman* hearing for claim construction, and the plaintiff told this court it was entitled to defendant's source code.  At no point did the plaintiff assert it could not prosecute this action without further discovery.  In *Exigent Technology, Inc. v. Atrana Solutions, Inc.*,  442 F.3d 1301, 1310 (Fed Cir.2006) (under Rule 56(f), which in the 2010 Amendments was moved to Rule 56(d)), the Court ruled:

> Under Rule 56(f), a party opposing summary judgment may request a continuance so that it can conduct any discovery needed to oppose the motion. Fed.R.Civ.P. 56(f) (2005). A Rule 56(f) motion must demonstrate, with particularity, what facts the movant hopes to obtain by discovery and how these facts will raise a genuine issue of fact. *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1259 n. 2 (11th Cir.2004); *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1280 (11th Cir.1998). The moving party must also have been diligent. *Barfield v. Brierton*, 883 F.2d 923, 931-33 & n. 11 (11th Cir.1989); *Druid Hills Civic Ass'n v. Fed. Highway Admin.*, 833 F.2d 1545, 1550-51 (11th Cir.1987).

See also *Keh v. Americus and Sumter County Hosp.*, 377 Fed.Appx. 861, 867 (11th Cir.2010)("A Rule 56(f) motion must be supported by an affidavit which sets forth with particularity the facts the moving party expects to discover and how those facts would create a genuine issue of material fact precluding summary judgment. *See* Fed.R.Civ.P. 56(f). Keh did not file an affidavit with her rule 56(f) motion. Thus, the district court did not abuse its discretion in denying her Rule 56(f) motion"); *Hendricks v. Rambosk*, 2011 WL 1429646, 5 (M.D.Fla.2011) ("plaintiffs 'may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts, but rather he must specifically demonstrate how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact.')(citing *Reflectone*, 862 F.2d at 843 (quoting *Wallace v. Brownell Pontiac–GMC Co.*, 703 F.2d 525, 527 (11th Cir.1983) (internal citations omitted)).  *See also Taylor v. Holiday Isle, LLC*, 561 (F.Supp.2d 1269, 1275 n. 11 (S.D.Ala.2008) ("Unadorned representations of counsel in a summary judgment brief are not a substitute for appropriate record evidence"); *Nieves v. University of Puerto Rica*, 7 F.3d 270, 276 (1st Cir.1993) (same).

Plaintiff complied with neither the letter nor the spirit of Rule 56.

*Markman hearing*:

Plaintiff has obstinately insisted that this court cannot rule on summary judgment, or conduct other proceedings, until the court construes the patent claims by means of a *Markman* hearing.  Plaintiff is correct that determination of a claim of infringement is a two step inquiry.  First, the claims are construed, a question of law in which the scope of the asserted claim is defined.  Second, the claims, as construed are compared to the accused device.  *See Bayer AG*, 212 F.3d at 1247.  However, under the facts of this case, the court finds a *Markman* hearing is not necessary, for the reasons set forth below.  "A court may, but need not, conduct a *Markman* hearing to determine the scope of the claims." *Wi-Lan, Inc. v. LG Electronics, Inc.,* 2011 WL 3279075 *18 (S.D.N.Y.2011) (quoting *CIAS, Inc. v. Alliance Gaming Corp*., 424 F.Supp.2d 678, 682 (S.D.N.Y.2006), *aff'd*, 504 F.3d 1356 (Fed.Cir.2007), *cert. denied*, 553 U.S. 1018, 128 S.Ct. 2080 (2008).

"Summary judgment of noninfringement is ... appropriate where the patent owner's proof is deficient in meeting an essential part of the legal standard for infringement, because such failure will render all other facts immaterial." *TechSearch, L.L.C. v. Intel Corp*., 286 F.3d 1360, 1369 (Fed.Cir.2002).  Because the plaintiff does not dispute the meaning of any terms, the court finds no need  for a *Markman* hearing. Nothing in patent law mandates the use of a *Markman* hearing in

every case. *See, e.g., Aspex Eyewear, Inc. v. E'Lite Optik, Inc.*, 2002 WL 1751381 at
*11 n. 6 (N.D.Tex.2002) ("A *Markman* hearing is unnecessary in this case. In some
patent cases, a claim construction hearing allows the court to question and evaluate
attorney argument and/or witness testimony regarding the competing claim
constructions. This process may be helpful when the claims are ambiguous or the
technology is complex. ...Courts retain the discretion to construe the claims on the
basis of a paper record alone.") (citations omitted); *Rogers v. Desa Int'l, Inc.*, 166
F.Supp.2d 1202, 1204-05 (E.D.Mich.2001) (Noting that a *Markman* hearing was not
a necessary procedure); *Electronic Planroom, Inc. v. McGraw-Hill Cos.*, 135
F.Supp.2d 805, 832 n. 25 (E.D.Mich.2001) ("the Court finds it unnecessary to
conduct a separate *Markman* hearing before ruling on the pending motions."); *LRC
Elec., Inc. v. John Mezzalingua Assocs., Inc.*, 974 F.Supp. 171, 181-82
(N.D.N.Y.1997) ("A *Markma*n hearing to define the [disputed claim] term ... would
only be necessary if the Court needed expert testimony to interpret the term.....").

     Defendant has asked plaintiff to define a variety of terms through discovery,
and the plaintiff has refused, repeatedly asserting that such construction is reserved
to the court under *Markman*.

> The purpose of claim construction is to determine the meaning and
> scope of the patent claims that the plaintiff alleges have been infringed.
> *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351,

1360 (Fed.Cir.2008). "The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed.Cir.2005)(en banc) (*quoting Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed.Cir.1998)).

*Every Penny Counts, Inc. v. American Express Co.* 563 F.3d 1378, 1381 (Fed.Cir. 2009). However, the court's duty is to construe only ***disputed*** claim terms, not every term the parties conceivably claim to be related to the patent at issue. *See e.g., Bettcher Industries, Inc. v. Bunzl USA, Inc.*, 661 F.3d 629, 635 (Fed.Cir.2011) ("[b]oth sides agree that 'only ***disputed*** claim terms need to be construed by the Court'" (emphasis added); *TDM America, LLC v. U.S.*, 100 Fed. Cl., 485, 486 (Fed.Cl.2011)(where the Court issued its *Markman* claim construction decision interpreting ***disputed*** claim terms).

Plaintiff has acknowledged the parties' obligations to exchange lists of proposed claim terms for construction and to meet and confer with opposing counsel to provide the court with disputed terms. *See e.g.*, plaintiff's motion for *Markman* hearing (doc. 23) at 9. The defendant attempted to begin this process and obligation through use of discovery. The plaintiff's sole response has been that all claim construction is for the court. More egregious, plaintiff refused to participate in this discovery, refusing to respond to any requests which "concerns, relates or pertains to

Baron's 'claim construction position' and is therefore premature.  Baron ... will disclose the appropriate information on the date said information is due MWI under the proposed schedule and the Patent Rules."[16]  *Id.*, at 14.

During the hearing on this motion, the defendant noted the same, stating it has requested plaintiff provide it with meanings for terms and plaintiff responded "We don't know.  That's for the Court to decide."  HR 46.  Plaintiff of course disputed this characterization.  HR 54.  Counsel for plaintiff asserted:

> But eventually, at the end of the day, if there is a dispute as to what the boundaries of a cell means in the context of the patent, we do defer to the Court that that is something as a matter of law that gets to be decided by the Court.
>
> THE COURT: Do you not think that a *Markman* hearing presupposes that you and the defendant get together and see which claims and terms you can agree on, particularly which terms you can agree on, so that the Court doesn't have to delve into every term used in the patent application?

---

[16]The court again notes that plaintiff opted to refuse to answer discovery based on its own proposed schedule which was never adopted by the court and procedural rules which were never adopted by the court.  The court did however enter a Scheduling Order for the sole purpose of governing these proceedings.  This Scheduling Order was ***jointly*** proposed by the parties in their Rule 26 (f) report (doc. 12).

Although that report did contain alternative proposals from plaintiff and defendant, neither of those alternative proposals dealt with Patent Rules or deadlines concerning a *Markman* hearing.  Rather, the defendant filed a motion seeking an order that it need not respond to certain requests until after the court held a *Markman* hearing (doc. 18).  The plaintiff thereafter responded that full discovery prior to a *Markman* hearing was beneficial, and that "[t]he parties have not requested, and the Court has not set a date for, a *Markman* hearing.  Thus, neither the parties, nor the Court, know when the hearing will occur, much less when the Court's busy schedule will allow it to actually issue its claim construction ruling" (doc. 21, at 11, 13).

The plaintiff never moved to have that Scheduling Order modified.  While the undersigned is sure that plaintiff's actions were well-intentioned, the court does question plaintiff's purpose in ignoring court orders in favor of its own proposed time lines and rules of procedure.

MR. HALL: We do, Your Honor.

THE COURT:  So why wouldn't it be relevant if you answered that question?

MR. HALL: Why wouldn't it – I'm sorry?

THE COURT: Why shouldn't you answer that question?  Why would you have to say that's for the Court to decide?  Because what a *Markman* hearing presupposes is you define your terms, they say we agree or disagree, this is how we look at it, and if there are disagreements, you present those to the Court.  You don't just throw it all in my lap, which seems to me like you are doing that with your answer.

MR. HALL: Well, I believe we did – we objected to the extent that the Court may define a cell differently, but we did go on to say the request is denied.

THE COURT: Wait. And where did you say but this is how we define it?  The Court may be different, but this is how we define it?

MR. HALL: In the context of this request for admission, Your Honor, I don't believe we offered a –

THE COURT: Have you anywhere said this is how we define it?

MR. HALL: I don't believe so, Your Honor.  I don't believe we have.

HR 55-57.

Given the plaintiff's insistence that the meaning of various terms in the patent are solely for the court's construction and determination, the court finds a *Markman*

hearing is not necessary. The plaintiff clearly does not desire to provide any evidence concerning construction of its patent.

The plaintiff has also relied on its request for a *Markman* hearing to allege the defendant's motion for summary judgment is untimely. However, having considered the foregoing, the court is of the opinion that any claim construction hearing would be fruitless as, from the evidence submitted by defendant in support of its motion, the court can only conclude that the defendant's product simply does not do anything more than take public information and redistribute it to paying subscribers.[17]

## CONCLUSION

Given defendant's evidence, and the plaintiff's lack thereof, the court finds that it can construe the patent claims to the extent necessary as a matter of law. Because the plaintiff has been either unwilling or unable to set forth what its own patent terms mean, the court finds summary judgment is appropriate as there can be no evidence under these circumstances that defendant's service infringes plaintiff's patent.

---

[17]The fact that the defendant has customers paying for information that is available for free does not require a finding that the defendant must be selling something more than what it claims, as plaintiff suggests. Americans have long been willing to pay for information that is available to the public for free. An obvious example is individuals who pay for DVR services or devices to record television shows which air for free and are available "on demand" for free, so that the show will be available to them when they want it. Similarly, individuals purchase the entire season of TV shows which aired for free. Americans are willing to pay for convenience. Defendant's product assumably falls into this category.

Defendant also provided evidence that spoken warnings are the most effective in causing people to respond. Perhaps consumers are willing to pay for the benefit of a verbal warning.

Defendant does not do any analysis or prediction based on the information obtained from the National Weather Service. All defendant does is pass along the information obtained to its subscribers.

Having considered the foregoing, the court is of the opinion that the defendant's motion for summary judgment is due to be granted on non-infringement, and the court shall so rule by separate order.  The court specifically finds that the defendant's product does not infringe on the plaintiff's patent, either directly or under the doctrine of equivalents.  The court shall so rule by separate order.

Having determined that there are no genuine issues of material fact remaining in this case, the plaintiff's motion for a *Markman* hearing, and the plaintiff's motion to compel are both found to be **MOOT.**

**DONE** and **ORDERED** this the 1st day of February, 2012.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE