# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| BARON SERVICES, INC., ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | **Civil Action No. CV-11-S-1606-NE** |
| ) | |
| WEATHERCALL   SERVICES, ) | |
| LLC, ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION AND ORDER

This case involves United States Patent No. 6,490,525 ("the '525 patent"),

entitled "Systems and Methods for Distributing Real-Time Site-Specific Weather

Information."[1]   The patent is owned by plaintiff, Baron Services, Inc.  The patent

---

[1] U.S. Patent No. 6,490,525, at [54] (filed Aug. 13, 2001) (hereinafter "'525 Patent"); *see also, e.g.*, doc. no. 1-1 (Complaint, Ex. "1"), at ECF 2 (same).  "ECF" is the acronym for "Electronic Case Filing," a system that allows parties to file and serve documents electronically.  *See Atterbury v. Foulk*, No. C-07-6256 MHP, 2009 WL 4723547, *6 n.6 (N.D. Cal. Dec. 8, 2009).  *Bluebook* Rule 7.1.4 *permits* citations to the "page numbers generated by the ECF header." *Wilson v. Fullwood*, 772 F. Supp. 2d 246, 257 n.5 (D.D.C. 2011) (citing *The Bluebook: A Uniform System of Citation* R. B. 7.1.4, at 21 (Columbia Law Review Ass'n *et al.*, 19th ed. 2010)).  Even so, the *Bluebook* recommends "against citation to ECF pagination in lieu of original pagination."  *Wilson*, 772 F. Supp. 2d at 257 n.5.  Thus, unless stated otherwise, this court will cite the original pagination in the parties' pleadings.  When the court cites to pagination generated by the ECF header, it will, as here, precede the page number with the letters "ECF."

The '525 patent is attached as an exhibit in numerous documents in the record of this action.  *See, e.g.*, doc. no. 1-1 (Complaint, Exhibit "1"); doc. no. 38-8 (Index of Evidence in Support of Baron Services, Inc's Motion to Compel, Exhibit "8"); doc. no. 98-1 (P.R. 4-3 Joint Claim Construction and Prehearing Statement, Exhibit "A"); doc. no. 101 (Baron Services, Inc.'s Opening Claim Construction Brief, Exhibit "A"), at ECF 44–57; doc. no. 104-1 (Defendant WeatherCall LLC's Responsive Claim Construction Brief, Exhibit "A").  For convenience, the court will cite to the patent itself, rather than numerous places the patent appears in the record, throughout the following memorandum opinion and order.

issued on December 3, 2002, and claims priority to a provisional patent application filed on June 4, 1996.[2]  WeatherCall Services, LLC, the defendant in this action, offers "WeatherCall" severe weather alerting products and services.[3]  Baron Services claims that WeatherCall's products and services infringe the '525 patent.[4]

The patent's specification explains that the invention "generally relates to systems and methods for weather reporting and forecasting, and, more particularly, to computerized systems and methods for reporting and forecasting real-time weather information."[5]

The inventors of the '525 patent, all of whom were employees of Baron Services, recognized that a need existed in the industry for an improvement in the delivery of real-time weather information for a localized area to people in that area

---

[2] '525 Patent, at [60].  As stated in the Patent Applications Handbook:

A provisional application, as described in 37 C.F.R. § 1.53(c), is designed to be a simple, inexpensive patent application that will not be examined except for formalities.  It does not require claims or a declaration, although the correct inventors must be named.  The provisional application will establish a priority date for any subsequently filed regular (nonprovisional) U.S. application.  The provisional application will also establish a U.S. priority date for foreign applications.

Patent Applications Handbook § 5:33; *see also* 37 C.F.R. § 1.53(c) (detailing the application filing requirements for a provisional patent application).

[3] *See, e.g.*, doc. no. 101 (Baron Services, Inc.'s Opening Claim Construction Brief), at ECF 4.

[4] *Id.*; *see also* doc. no. 1 (Complaint) ¶¶ 10–14.

[5] '525 Patent, at col. 1, *ll*. 19–22.

during times of severe weather.[6]   The invention disclosed in the '525 patent was

designed to meet that need, and provide relevant, site-specific, real-time weather

information.[7]

The systems and methods disclosed in a basic embodiment of the '525 patent

for distributing real-time, site-specific, weather information utilize a special purpose

computer receiving meteorological data, a distribution network, and a plurality of

remote units.[8]  The meteorological data can include the storm's location and type, and

may be provided automatically from a data provider, or manually, or through a

combination of the two.[9]

Among other things, the computer utilizes an end-user database that associates

each end-user with a location.[10]  The end-user database may also identify the means

by which to contact the end-users, such as by a telephone call or pager message.[11]

Then, by determining the end-user-associated-locations impacted by the storm or

severe weather system, the specific end-users and remote units to be notified of the

weather event can be identified and alerted.[12]  The remote units to be alerted may be

---

[6] *Id.* at col. 2, *ll.* 46–49.

[7] *Id.* at col. 2, *ll.* 53–58.

[8] *Id.* at col. 2, *l.* 59 to col. 3, *l.* 1.

[9] *Id.* at col. 3, *ll.* 21–29.

[10] *Id.* at col. 8, *ll.* 3–6.

[11] *See* '525 Patent, at col. 8, *ll.* 18–21.

[12] *Id.* at col. 8, *ll.* 6–11.

located in a private home, a public facility, a mobile vehicle,[13] or integrated into conventional communication devices, such as conventional, land-line telephones, wireless (cellular) telephones, and pagers.[14]

The patent's specification explains that the distribution network "can be implemented by a variety of different communication mediums, such as, but not limited to, wireless, cable television, pager, land-line telephone, satellite, etc."[15] One configuration for the distribution network is a wireless network that initiates a call based upon a number that is an address that the weather alert manager retrieved from a subscriber database.[16]

In some contexts, the distribution network is determined by the type of remote unit.[17]  For example, if the remote unit were a pager, then the distribution network would be a pager network suitable for interfacing with the pager remote unit.[18] Similarly, if the remote unit were a cellular telephone, then the distribution network would be a wireless network able to interface with the wireless remote unit.[19]

---

[13] *Id.* at col. 8, *ll.* 49–53.

[14] *Id.* at col. 9, *ll.* 47–59.

[15] *Id.* at col. 8, *ll.* 22–25.

[16] *Id.* at col. 8, *ll.* 33–37.

[17] *See* '525 Patent, at col. 9, *ll.* 51–52.

[18] *Id.* at col. 9, *ll.* 52–55.

[19] *Id.* at col. 9, *ll.* 55–58.

# I. GOVERNING LAW

Claim construction is a matter of law. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995). Claim construction is designed to resolve "disputed meanings and technical scope . . . for use in the determination of infringement," and is intended to aid the finder of fact. *United States Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997).

The words of a claim "are generally given their ordinary and customary meaning," measured at the time of the invention by a "person of ordinary skill in the art." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). There is a "heavy presumption" that claim terms carry their ordinary and customary meaning. *Epistar Corp. v. International Trade Commission*, 566 F.3d 1321, 1334 (Fed. Cir. 2009).

Although it is generally unnecessary to construe terms that have a plain and ordinary meaning, the court still must resolve the parties' dispute over the *scope* of a claim term, even if that term consists of words having well-recognized, commonly understood meanings. *O2 Micro International, Ltd. v. Beyond Innovation Technology Co., Ltd.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008). That requirement may be satisfied by declining to adopt a party's proposed construction, and giving the

terms their plain and ordinary meaning.  *See, e.g.*, *Active Video Networks, Inc. v. Verizon Communications, Inc.*, 694 F.3d 1312, 1325–26 (Fed. Cir. 2012).

To determine scope and meaning, courts look to "the words of the claims themselves, the written description, the prosecution history, and, lastly, any relevant extrinsic evidence." *Eon-Net L.P. v. Flagstar Bancorp*, 653 F.3d 1314, 1320 (Fed. Cir. 2011) (citing *Phillips*, 415 F.3d at 1312–19).  The most important claim construction tool is the claim language itself, and the "actual words of the claim are the controlling focus" throughout the construction process.  *Digital Biometrics, Inc. v. Identix, Inc.*, 149 F.3d 1335, 1344 (Fed. Cir. 1998).

Courts "cannot rewrite claim language." *Helmsderfer v. Bobrick Washroom Equipment, Inc.*, 527 F.3d 1379, 1383 (Fed. Cir. 2008).  Courts also "will not read unstated limitations into claim language." *Northern Telecom Ltd. v. Samsung Electronics Co., Ltd.*, 215 F.3d 1281, 1290 (Fed. Cir. 2000).

The claims "must be read in view of the specification of which they are a part," *Phillips*, 415 F.3d at 1315, but the court must "avoid impermissibly importing limitations from the specification." *Alloc, Inc. v. International Trade Commission*, 342 F.3d 1361, 1370 (Fed. Cir. 2003).  Courts also "normally do not interpret claim terms in a way that excludes embodiments disclosed in the specification." *Oatey Co. v. IPS Corp.*, 514 F.3d 1271, 1276 (Fed. Cir. 2008).

6

The court also may consider the prosecution history, but statements made by the patentee during prosecution cannot limit the scope of a claim unless it is "clear and unmistakable that the patentee intended that limitation." *Aria Diagnostics, Inc. v. Sequenom, Inc.*, 726 F.3d 1296, 1302 (Fed. Cir. 2013).

Extrinsic evidence can be useful, but cannot contradict the intrinsic evidence. Extrinsic evidence "cannot alter any claim meaning discernable from intrinsic evidence." *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004). Dictionaries may be used for guidance in determining the plain meaning of claim terms when the intrinsic evidence is silent as to that meaning. *Helmsderfer*, 527 F.3d at 1382. Some words or phrases may have a meaning that is so obvious, however, that there is no need to even reach for a dictionary. *W.E. Hall Co., Inc. v. Atlanta Corrugating, LLC*, 370 F.3d 1343, 1350 (Fed. Cir. 2004).

## II.  THE CLAIM TERMS IN DISPUTE

### A.  "contact identifiers/identify"

The phrase "contact identifiers" appears in claims 1, 10, 15, 16, 24, and 29. Claim 1 reads as follows:

> A system for providing weather event notifications, comprising:
>
> memory for storing *contact identifiers* that *identify* a plurality of remote units; and

7

logic configured to make a determination as to whether one of said *contact identifiers identifies* at least one of said remote units that is located within a geographic region of an impending weather event, said logic further configured to transmit, if said logic determines in said determination that said one *contact identifier identifies* a remote unit located within said geographic region, a signal to the at least one remote unit based on said one *contact identifier* thereby enabling the at least one remote unit to notify a user within said geographic region of said impending weather event.[20]

Claim 10 reads as follows:

The system of claim 7, wherein said weather event manager is configured to associate said remote units with said different locations by storing *contact identifiers identifying* said remote units and by correlating different ones of said *contact identifiers* with different ones of said locations, said weather event manager further configured to transmit said signal based on a determination by said weather event manager that a *contact identifier identifying* said one remote unit is correlated with said expected location.[21]

Claim 15 reads as follows:

The system of claim 12, wherein said memory includes data correlating a *contact identifier* with one of said regions, said *contact identifier identifying* the one or more remote units, said processor instructed to retrieve said *contact identifier* in response to a determination that said one region is affected by said weather event and to transmit said activation signal to the one or more remote units based on said retrieved *contact identifier*.[22]

Claim 16 reads as follows:

---

[20] *Id*. at col. 10, *ll*. 33–47 (emphasis supplied).

[21] *Id*. at col. 11, *ll*. 19–27 (emphasis supplied).

[22] *Id*. at col. 11, *ll*. 55–62 (emphasis supplied).

A method for providing weather event notifications, comprising the steps of:

storing a plurality of *contact identifiers* that *identify* a plurality of remote units;

determining that a weather event is expected to occur within a particular geographic region;

automatically selecting, in response to said determining step, at least one of said *contact identifiers* that *identifies* at least one of said remote units located within said particular geographic region;

establishing communication with the at least one remote unit based on the at least one *contact identifier* selected in said selecting step; and

causing the at least one remote unit to automatically notification [*sic*] a user of said expected weather event.[23]

Claim 24 reads as follows:

The method of claim 21, wherein said associating step includes the steps of:

storing *contact identifiers identifying* said remote units; and

correlating different ones of said *contact identifiers* with different ones of said locations,

wherein said method further comprises the step determining whether one of said *contact identifiers identifying* said one remote unit is correlated with said expected location indicated by said meteorological data, and wherein said transmitting step is based on said

---

[23] '525 Patent, at col. 11, *l.* 64 to col. 12, *l.* 11 (alteration and emphasis supplied).

determining step.[24]

Claim 29 reads as follows:

> The method of claim 26, further comprising the steps of:
>
> storing at least one *contact identifier identifying* the at least one remote unit;
>
> correlating the at least one *contact identifier* with said grid cell affected by said weather event; and
>
> retrieving the at least one *contact identifier* based on said correlating step and in response to a determination that said grid cell is affected by said weather event data.
>
> wherein said transmitting step is based on the at least one *contact identifier* retrieved in said retrieving step.[25]

The parties agree that a "contact identifier" is an "address" that is "associated with" one or more remote units.  The disagreement between the parties is over the examples or descriptions provided by each party.

Baron's proposed construction for "contact identifier" is a "communication address, *e.g.*, telephone number, pager number, etc."[26]   Baron's examples of a telephone number or pager number are taken directly from the patent:  specifically, claims 4–5,[27] 8–9,[28] 13–14,[29] 19–20,[30] 22–23,[31] and 27–28.[32]

---

[24] *Id.* at col. 12, *ll.* 48–59 (emphasis supplied).

[25] *Id.* at col. 14, *ll.* 1–12 (emphasis supplied).

[26] *E.g.*, doc. no. 98 (P.R. 4-3 Joint Claim Construction and Prehearing Statement), at 3.

[27] *See* '525 Patent, at col. 10, *ll.* 56–59 ("[Claim] 4.  The system of claim 1, wherein the at

In contrast, WeatherCall's proposed construction for "contact identifier" is "any address (*i.e.*, designation, number[,] or code) that is associated with one or more remote units."[33]  WeatherCall's proposed descriptions — "*i.e.*, designation, number[,] or code" — are not taken from the patent.  The patent nowhere refers to a contact identifier, or an address, as either a "designation" or "code."

The patent specification *does* state that weather information may be distributed by a wireless network or a land-line telephone network.[34]  Even so, as indicated by

---

least one remote unit is a pager.  [Claim] 5.  The system of claim 1, wherein the at least one remote unit is a telephone."  (alterations supplied)).

[28] *Id.* at col. 11, *ll*. 14–17 ("[Claim] 8.  The system of claim 7, wherein said one remote unit is a pager.  [Claim] 9.  The system of claim 7, wherein said one remote unit is a telephone." (alterations supplied)).

[29] *Id.* at col. 11, *ll*. 51–54 ("[Claim] 13.  The system of claim 12, wherein one of the one or more remote units is a pager.  [Claim] 14.  The system of claim 12, wherein one of the one or more remote units is a telephone."  (alterations supplied)).

[30] *Id.* at col. 12, *ll*. 24–27 ("[Claim] 19.  The method of claim 16, wherein the at least one remote unit is a pager.  [Claim] 20.  The method of claim 16, wherein the at least one remote unit is a telephone."  (alterations supplied)).

[31] *Id.* at col. 12, *ll*. 44–47 ("[Claim] 22.  The method of claim 21, wherein said one remote unit is a pager.  [Claim] 23.  The method of claim 21, wherein said one remote unit is a telephone."  (alterations supplied)).

[32] *Id.* at col. 13, *ll*. 11–14 ("[Claim] 27.  The method of claim 26, wherein the at least one remote unit is a pager.  [Claim] 28.  The method of claim 26, wherein the at least one remote unit is a telephone."  (alterations supplied)).

[33] Doc. no. 98 (P.R. 4-3 Joint Claim Construction and Prehearing Statement), at 3 (alteration supplied).

[34] *See, e.g.*, '525 Patent, at col. 4, *ll*. 38–41 ("The real-time site specific weather information may be distributed by any number of communication mediums such as a wireless network, a land-line telephone network, or a television cable network."); *see also id.*, at col. 8 ll. 33–37 ("An example of one configuration for the distribution network is a wireless network that initiates a call based upon a number (*i.e.*, address) that the weather alert manager retrieved from a subscriber database.").

the use of the abbreviation "*e.g.*," the examples provided by Baron are merely illustrative, and not exclusive.   They are intended to assist the reader in understanding, by way of examples taken directly from the patent, the meaning of "contact identifier."   Thus, rather than expand the list of examples beyond those specified in the patent, Baron's examples are helpful and appropriate, because they are taken directly from the patent claims themselves and, importantly, are specified to be non-exclusive.

In summary, WeatherCall's proposed construction is *rejected*.

**B.**   **"remote unit"**

The phrase "remote unit" appears in claims 1, 7, 12, 16, 21, and 26.   Claim 1 reads as follows:

> A system for providing weather event notifications, comprising:
>
> memory for storing contact identifiers that identify a plurality of *remote units*; and
>
> logic configured to make a determination as to whether one of said contact identifiers identifies at least one of said *remote units* that is located within a geographic region of an impending weather event, said logic further configured to transmit, if said logic determines in said determination that said one contact identifier identifies a *remote unit* located within said geographic region, a signal to the at least one *remote unit* based on said one contact identifier thereby enabling the at least one *remote unit* to notify a user within said geographic region of said impending weather event.[35]

---

[35] *Id.* at col. 10, *ll.* 33–47 (emphasis supplied).

Claim 7 reads as follows:

> A system for providing weather event notifications, comprising:
>
> a plurality of *remote units*; and
>
> a weather event manager configured to respectively associate said *remote units* with different locations and to receive meteorological data indicative of an occurrence of a weather event, said meteorological data indicating an expected location of said occurrence, said weather event manager further configured to analyze said meteorological data and to automatically transmit, based on an analysis of said meteorological data by said weather event manager, a signal to one of said *remote units* that is associated with said expected location by said weather event manager,
>
> wherein said one *remote unit* is configured to communicate a weather notification in response to said signal.[36]

Claim 12 reads as follows:

> A system for distributing weather event notifications to at least one or more *remote units*, comprising:
>
> memory for storing geographic data representative of a geographic area, said geographic are[a] being partitioned into a plurality of regions; and
>
> a computer configured to receive weather event data from a data source, the weather event data indicative of the geographic boundary of a weather event to be warned for, said computer including a processor instructed to compare said weather event data to said geographic data to determine which region or regions of said plurality of said regions is affected by said weather event and to transmit an activation signal to the one or more *remote units* located within said region or regions affected

---

[36] *Id.* at col. 10, *l.* 65 to col. 11, *l.* 13 (emphasis supplied).

by said weather event.[37]

Claim 16 reads as follows:

A method for providing weather event notifications, comprising the steps of:

storing a plurality of contact identifiers that identify a plurality of *remote units;*

determining that a weather event is expected to occur within a particular geographic region;

automatically selecting, in response to said determining step, at least one of said contact identifiers that identifies at least one of said *remote units* located within said particular geographic region;

establishing communication with the at least one *remote unit* based on the at least one contact identifier selected in said selecting step; and

causing the at least one *remote unit* to automatically notification [*sic*] a user of said expected weather event.[38]

Claim 21 reads as follows:

A method for providing weather event notifications, comprising the steps of:

respectively associating a plurality of *remote units* with a plurality of locations;

receiving meteorological data that indicates an occurrence of a weather event, said meteorological data including data that indicates an

---

[37] *Id.* at col. 11, *ll.* 35–50 (alteration and emphasis supplied).

[38] *Id.* at col. 11, *l.* 64 to col. 12, *l.* 11 (alteration and emphasis supplied).

expected location of said occurrence;

analyzing said meteorological data;

automatically transmitting, based on said analyzing step, a signal to one of said *remote units* that is associated, via said associating step, with said expected location indicated by said meteorological data; and

communicating a notification of said weather event, via said one *remote unit*, in response to said signal.[39]

Claim 26 reads as follows:

A method for providing weather event notifications, comprising the steps of:

receiving weather event data indicative of a boundary of a weather event to be warned for;

comparing said weather event data to a geographic grid including a plurality of grid cells to determine which grid cell is affected by said event weather event [*sic*] data; and

transmitting an activation signal to at least one *remote unit* geographically located within a grid cell affected by said weather event data to automatically activate the at least one *remote unit*.[40]

WeatherCall proposes to construe the term "remote unit" as meaning "any type of device capable of receiving and processing a signal or other communication, and providing audio and/or visual indicators to convey information to a user."[41]  That

---

[39] *Id.* at col. 12, *ll.* 28–42 (emphasis supplied).

[40] '525 Patent, at col. 12, *l.* 66 to col. 13, *l.* 10 (alteration and emphasis supplied).

[41] *E.g.*, doc. no. 98 (P.R. 4-3 Joint Claim Construction and Prehearing Statement), at 4.

definition is overbroad.  By construing "remote unit" to include *any* "device capable of receiving and processing" *any* signal or other communication, and using audio or visual indicators to convey "information" to a user, WeatherCall's proposed definition would include a wide array of electronic devices that play no role in the systems and methods described in the '525 patent.

In contrast, Baron's proposed construction for "remote unit" is a "device that receives remotely generated signals from a distribution network and provides weather event notifications to a user, *e.g.*, telephone, pager, etc."[42]  Baron's construction is a patent-specific subset of WeatherCall's construction.  Consistent with the patent language, this narrower construction clarifies that the receiving unit is remote from where the signals are generated, and that the signals are sent *via* a "distribution network."[43]  Further, the signals do not convey all types of generic "information," but, instead, exclusively provide "weather event notifications."[44]

Finally, as in its proposed definition of "contact identifiers," Baron's examples of a telephone and pager are taken from the patent's specification, as well as from the claims of the patent itself.  The claims state that a "remote unit" may be a pager or a

---

[42] *E.g.*, *id.*

[43] *See, e.g.*, '525 Patent, at fig. 4, item 64 ("Distribute the storm profiles to the respective remote units via the distribution network.").

[44] *See, e.g.*, notes 36–41, *supra* (referring to "weather event notifications" in Claims 1, 7, 12, 16, 21, and 26).

telephone,[45] which obviously will have corresponding, specific pager numbers and telephone numbers.   Those examples are indented to assist the reader in understanding the types of devices contemplated by the patentee and, as in the proposed definition of "contact identifiers," are specified to be non-exclusive by the use of "*e.g.*" and "etc."

"The construction that stays true to the claim language and most naturally aligns with the patent's description will be, in the end, the correct construction." *Power Integrations v. Fairchild Semiconductor*, 711 F.3d 1348, 1361 (Fed. Cir. 2013).   In this case, Baron's narrower definition of "remote unit" more closely comports with the claim language and patent description; and WeatherCall's proposed construction is *rejected*.

## C.    "determination/determine/determining"

The terms "determination," "determine," and "determining" appear in claims 1, 12, 16, and 26.   Claim 1 reads as follows:

A system for providing weather event notifications, comprising:

memory for storing contact identifiers that identify a plurality of remote units; and

logic configured to make a *determination* as to whether one of

---

[45] *See* '525 Patent, at col. 10, *ll*. 56–59 ("[Claim] 4.  The system of claim 1, wherein the at least one remote unit is a pager.  [Claim] 5.  The system of claim 1, wherein the at least one remote unit is a telephone." (alterations supplied)).

said contact identifiers identifies at least one of said remote units that is located within a geographic region of an impending weather event, said logic further configured to transmit, if said logic determines in said *determination* that said one contact identifier identifies a remote unit located within said geographic region, a signal to the at least one remote unit based on said one contact identifier thereby enabling the at least one remote unit to notify a user within said geographic region of said impending weather event.[46]

Claim 12 reads as follows:

A system for distributing weather event notifications to at least one or more remote units, comprising:

memory for storing geographic data representative of a geographic area, said geographic are[a] being partitioned into a plurality of regions; and

a computer configured to receive weather event data from a data source, the weather event data indicative of the geographic boundary of a weather event to be warned for, said computer including a processor instructed to compare said weather event data to said geographic data to *determine* which region or regions of said plurality of said regions is affected by said weather event and to transmit an activation signal to the one or more remote units located within said region or regions affected by said weather event.[47]

Claim 16 reads as follows:

A method for providing weather event notifications, comprising the steps of:

storing a plurality of contact identifiers that identify a plurality of remote units;

---

[46] *Id.* col. 10, *ll.* 33–47 (emphasis supplied).

[47] *Id.* at col. 11, *ll.* 35–50 (alteration and emphasis supplied).

*determining* that a weather event is expected to occur within a particular geographic region;

automatically selecting, in response to said *determining* step, at least one of said contact identifiers that identifies at least one of said remote units located within said particular geographic region;

establishing communication with the at least one remote unit based on the at least one contact identifier selected in said selecting step; and

causing the at least one remote unit to automatically notification [*sic*] a user of said expected weather event.[48]

Claim 26 reads as follows:

A method for providing weather event notifications, comprising the steps of:

receiving weather event data indicative of a boundary of a weather event to be warned for;

comparing said weather event data to a geographic grid including a plurality of grid cells to *determine* which grid cell is affected by said event weather event [*sic*] data; and

transmitting an activation signal to at least one remote unit geographically located within a grid cell affected by said weather event data to automatically activate the at least one remote unit.[49]

In the context of those claims, WeatherCall proposes that "the terms 'determination,' 'determine,' and/or 'determining' require predicting the future path

---

[48] *Id.* col. 11, *l.* 64 to col. 12, *l.* 11 (alteration and emphasis supplied).

[49] *Id.* at col. 12, *l.* 66 to col. 13, *l.* 10 (alteration and emphasis supplied).

of a weather event and not simply retrieving the geographic region or boundary of a weather event from an existing warning or forecast."[50]

In contrast, Baron submits that the words "determination," "determine," and "determining" have a plain and ordinary meaning, and what is "determined" in the context of a particular claim is evident from the claim language itself.[51]

Upon reviewing the claim language, the specification, and the prosecution history, the court can find no support for WeatherCall's proposed insertion of negative limitations to the scope of the terms "determination," "determine," and "determining."

### 1.    Claim language

The "determination" in claim 1 is "whether one of said contact identifiers identifies at least one of said remote units that is located within a geographic region of an impending weather event."[52]  That requires identifying which remote units are located within the geographic region of an impending weather event.   The determination is *not*, as argued by WeatherCall, a determination of the geographic region of the impending weather event itself.  To adopt WeatherCall's definition of

---

[50] Doc. no. 98 (P.R. 4-3 Joint Claim Construction and Prehearing Statement), at 5.

[51] *Id.*; *see also* doc. no. 101 (Baron Services, Inc's Opening Claim Construction Brief), at 16 ("Precisely *what* is decided in the context of a particular claim is evident from the claim language itself." (emphasis in original)).

[52] '525 Patent, at col. 10, *ll*. 37–40.

20

the term would require both a "determination" of the geographic region of the weather event, followed by an additional "determination" of the remote units located in the affected area — a construction that would impermissibly require a rewriting of the claims. *See, e.g.*, *Helmsderfer v. Bobrick Washroom Equipment, Inc.*, 527 F.3d 1379, 1383 (Fed. Cir. 2008).

Claim 12 includes both memory for storing "geographic data representative of a geographic area, said geographic area being partitioned into a plurality of regions," *and* the receipt of "weather event data indicative of the geographic boundary of a weather event to be warned for."[53]  In the context of claim 12, "determine" means "to compare weather event data received from a data source with stored geographic data, and decide what regions are affected by the weather event."[54]  The "determination" made in this context is *not*, as argued by WeatherCall, a determination of the "boundary of the weather event" itself.  Rather, *that* "determination" is made by the "data source" referenced in the claim, the inner workings of which are not claimed as part of the patent at issue.  As in claim 1, the practical effect of WeatherCall's proposed construction of "determine" would be to impermissibly rewrite claim 12.

Likewise, the dispute over the words "determine" and "determining" in claims

---

[53] *Id.* at col. 11, *ll.* 37–39, 41–43.

[54] Doc. no. 101 (Baron Services, Inc's Opening Claim Construction Brief), at 18.

16 and 26 involves the same issue of inserting negative limitations into the claims. Like claims 1 and 12, there is no language in claims 16 or 26 that precludes the use of a forecast or warning from a third party.  Rather, the "determination" in claim 16 is "whether a weather event is expected to occur within a particular geographic region,"[55] and the "determination" in claim 26 is "which grid cell is affected by the weather event," "based on a comparison of weather event data and a geographic grid including a plurality of grid cells."[56]

## 2.    Specification language

Although WeatherCall primarily relies on the language contained in the '525 patent's specification to support its proposed limitation on the scope of the terms "determination," "determine," and "determining," the specification does not adequately support WeatherCall's construction.

WeatherCall focuses on a particular embodiment in the specification that discusses how a user might predict a path of a storm, and seeks to import that particular embodiment into the claims.  That violates the well-established rule against impermissibly importing claim limitations from the specification.  *See, e.g., Alloc, Inc. v. International Trade Commission*, 342 F.3d 1361, 1370 (Fed. Cir. 2003).

---

[55] *Id.*

[56] *Id.* at 19.

For instance, WeatherCall points out that the patent specification teaches that "the step of combining said meteorological data with a geographical grid covering a predefined geographic area includes predicting a path of the storm based upon the meteorological data."[57]   That section of the specification, however, is merely one possible embodiment of the invention, as disclosed in the preceding paragraph, which reads as follows:  "The weather alert manager *may* include means for predicting a path of the storm based upon the meteorological data.  For example, the means for predicting a path of the storm may comprise a NexTrac computer program from Baron Services, Huntsville, Ala., USA."[58]   While the specification explains that the weather alert manager "may" predict a path of the storm, the use of that word also indicates that the weather alert manager may *not* do so.  In those embodiments where the weather alert manager does *not* include the means for predicting a path of the storm, that prediction must come from somewhere else, like the National Weather Service or another data provider.  In other words, while it is clear that some storm forecasting or prediction occurs within the *field* of the invention, this particular patent concerns the "determination" of *who* should *receive* the predictive weather alerts, and the manner of the transmission of those alerts, and not necessarily the "prediction"

---

[57] '525 Patent, at col. 3, *l.* 65 to col. 4, *l.* 2; *see also* doc. no. 104 (Defendant WeatherCall Services LLC's Responsive Claim Construction Brief), at 25.

[58] '525 Patent, at col. 3, *ll.* 39–43 (emphasis supplied).

itself.

### 3.    Prosecution history

Finally, the prosecution history does not support WeatherCall's construction. WeatherCall relies on a statement by the patentee in a "summary" section of the office action that the system described in the patent "determines which remote units are located in a geographic area determined by the system to be affected by the weather event . . . ."[59] There is no indication that determining the geographic area affected by the weather event cannot be done by simply using an existing warning. There is not even a specific discussion of the scope of the terms "determination," "determine," and "determining," and certainly no "clear and explicit statement" by Baron that could amount to a "clear disavowal" of claim scope, as required by *Thorner v. Sony Computer Entertainment America LLC*, 669 F.3d 1362, 1368 (Fed. Cir. 2012). *See also Home Diagnostics, Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1358 (Fed. Cir. 2004) ("Absent a clear disavowal or contrary definition in the specification or the prosecution history, the patentee is entitled to the full scope of its claim language."). Instead, the document cited by WeatherCall actually states that the meteorological data *itself* indicates the expected location of the weather event.[60]

---

[59] Doc. no. 104 (Defendant WeatherCall Services LLC's Responsive Claim Construction Brief), at 26 (quoting doc. no. 98-4 (P.R. 4-3 Joint Claim Construction and Prehearing Statement, Exhibit "C" (Response to Office Action)), at ECF 3).

[60] Doc. no. 98-4 (P.R. 4-3 Joint Claim Construction and Prehearing Statement, Exhibit "C"

Upon consideration, the terms "determination," "determine," and "determining" shall be accorded their full scope, and given their plain and ordinary meaning. *See, e.g.*, *Active Video Networks, Inc. v. Verizon Communications, Inc.*, 694 F.3d 1312, 1325–26 (Fed. Cir. 2012) (declining to adopt one party's proposed construction, and instead granting a term its plain and ordinary meaning).

In summary, the construction proposed by WeatherCall is *rejected*.

## D. "geographic region of an impending weather event"

The phrase "geographic region of an impending weather event" appears in claim 1, which reads as follows:

> A system for providing weather event notifications, comprising:
>
> memory for storing contact identifiers that identify a plurality of remote units; and
>
> logic configured to make a determination as to whether one of said contact identifiers identifies at least one of said remote units that is located within a *geographic region of an impending weather event*, said logic further configured to transmit, if said logic determines in said determination that said one contact identifier identifies a remote unit located within said *geographic region*, a signal to the at least one remote unit based on said one contact identifier thereby enabling the at least one

---

(Response to Office Action)), at ECF 13 (stating that the weather event manager receives "meteorological data indicating an expected location of an occurrence of a weather event"); *id.* at ECF 16 (indicating that the system includes the step of "receiving meteorological data that indicates an expected location of an occurrence of a weather event"); *id.* at ECF 18 (asserting that the system includes the step of "receiving weather event data indicative of a boundary of a weather event to be warned for"); *see also* doc. no. 104 (Defendant WeatherCall Services LLC's Responsive Claim Construction Brief), at 30 (citing doc. no. 98-4 (P.R. 4-3 Joint Claim Construction and Prehearing Statement, Exhibit "C" (Response to Office Action))).

remote unit to notify a user within said *geographic region of said impending weather event.*[61]

Baron argues that the words of the phrase should be given their plain meaning, and the phrase need not be defined.[62]  In contrast, WeatherCall proposes to rewrite the claim by inserting language requiring a *prediction* of the future path of a storm:  *i.e.*, "a geographic region that encompasses *the predicted future path* of the weather event."[63]

As addressed above, claim 1 contains no language requiring such a prediction. WeatherCall's proposed rewrite is based entirely on portions of the specification indicating that potential embodiments *may* include means for predicting the path of a storm.   WeatherCall is again asking the court to import limitations from the specification, rather than give effect to the plain language used in the claim.  For the reasons already discussed, WeatherCall's proposed definition is *rejected*, and the phrase "geographic region of an impending weather event" will be given its plain and ordinary meaning.

E.    **"boundary of a weather event to be warned for"**

The phrase "boundary of a weather event to be warned for" appears in claims

---

[61] '525 Patent, at col. 10, *ll.* 33–47 (emphasis supplied).

[62] Doc. no. 98 (P.R. 4-3 Joint Claim Construction and Prehearing Statement), at 6.

[63] *Id.* at 6–7 (emphasis supplied).

12 and 26.  Claim 12 reads as follows:

> A system for distributing weather event notifications to at least one or more remote units, comprising:
>
> memory for storing geographic data representative of a geographic area, said geographic are[a] being partitioned into a plurality of regions; and
>
> a computer configured to receive weather event data from a data source, the weather event data indicative of the geographic *boundary of a weather event to be warned for*, said computer including a processor instructed to compare said weather event data to said geographic data to determine which region or regions of said plurality of said regions is affected by said weather event and to transmit an activation signal to the one or more remote units located within said region or regions affected by said weather event.[64]

Claim 26 reads as follows:

> A method for providing weather event notifications, comprising the steps of:
>
> receiving weather event data indicative of a *boundary of a weather event to be warned for*;
>
> comparing said weather event data to a geographic grid including a plurality of grid cells to determine which grid cell is affected by said event weather event [*sic*] data; and
>
> transmitting an activation signal to at least one remote unit geographically located within a grid cell affected by said weather event data to automatically activate the at least one remote unit.[65]

---

[64] '525 Patent, at col. 11, *ll*. 35–50 (alteration and emphasis supplied).

[65] *Id.* at col. 12, *l*. 66 to col. 13, *l*. 10 (alteration and emphasis supplied).

Baron believes the phrase should be given its plain and ordinary meaning, while WeatherCall contends that the phrase means "a geographic boundary *or perimeter* that encompasses *the predicted future path* of the weather event."[66]

WeatherCall's contention that the phrase should be interpreted as requiring that a "predicted future path" of the weather event be "determined" is based on the same portions of the specification as those cited in support of WeatherCall's proposed definitions of the terms "determination," "determine," and "determining," as well as the phrase "geographic region of an impending weather event."[67]   In fact, claims 12 and 26 actually state that the weather event data *itself* is indicative of the location of the weather event to be warned for.[68]   Accordingly, the phrase "boundary of a weather event to be warned for" is to be given its plan and ordinary meaning, and WeatherCall's proposed construction is *rejected*.

---

[66] Doc. no. 98 (P.R. 4-3 Joint Claim Construction and Prehearing Statement), at 8 (emphasis supplied).

[67] *Compare id.* (citing the '525 patent, at col. 3, *ll*. 39–51, col. 3, *l*. 65 to col. 4, *l*. 2, col. 4, *ll*. 54–65, col. 6, *l*. 24 to col. 7, *l*. 23, and col. 10, *ll*. 5–24, as intrinsic evidence in support of WeatherCall's definition of "boundary of a weather event to be warned for"), *with id.* at 5 (citing the '525 patent, at col. 2, *ll*. 9–18, col. 3, *ll*. 39–51, col. 3, *l*. 65 to col. 4, *l*. 2, col. 4., *ll*. 54–65, col. 6, *l*. 24 to col. 7, *l*. 23, and col. 10, *ll*. 5–24, as intrinsic evidence in support of WeatherCall's definition of "determination/determine/determining"), *and id.* at 7 (citing the '525 patent, at col. 3, *ll*. 39–51, col. 3, *l*. 65 to col. 4, *l*. 2, col. 4, *ll*. 54–65, col. 6, *l*. 24 to col. 7, *l*. 23, and col. 10, *ll*. 5–24, as intrinsic evidence in support of WeatherCall's definition of "geographic region of an impending weather event").

[68] *See* '525 Patent, at col. 11, *ll*. 41–42 (referencing in Claim 12 "the weather event data *indicative of the geographic boundary* of a weather event to be warned for" (emphasis supplied)); *id.* at col. 13, *ll*. 1–2 (stating the first step of Claim 26 to be "receiving weather event data *indicative of a boundary* of a weather event to be warned for" (emphasis supplied)).

**F.** **"particular geographic region"**

The phrase "particular geographic region" appears in claim 16, which reads as

follows:

> A method for providing weather event notifications, comprising the steps of:
>
> storing a plurality of contact identifiers that identify a plurality of remote units;
>
> determining that a weather event is expected to occur within a *particular geographic region*;
>
> automatically selecting, in response to said determining step, at least one of said contact identifiers that identifies at least one of said remote units located within said *particular geographic region*;
>
> establishing communication with the at least one remote unit based on the at least one contact identifier selected in said selecting step; and
>
> causing the at least one remote unit to automatically notification [*sic*] a user of said expected weather event.[69]

Claim 16 includes the step of "determining that a weather event is expected to

occur within a particular geographic region."[70]  The dispute over the meaning of the

phrase "particular geographic region" presents the same issues as the parties'

constructions of "geographic region of an impending weather event" and "boundary

---

[69] *Id.* at col. 11, *l.* 64, to col. 12, *l.* 11 (alteration and emphasis supplied).

[70] *Id.* at col. 12, *ll.* 1–2.

29

of a weather event to be warned for": *i.e.*, Baron proposes that the phrase should be given its plain and ordinary meaning; while WeatherCall proposes that it means "the specific geographic region that encompasses *the predicted future path* of the weather event."[71]   For the same reasons as previously stated, the phrase should be given its plain meaning, without impermissibly importing limitations from the specification and rewriting the claim, and WeatherCall's proposed construction is *rejected*.

## G.   "meteorological data indicative/indicating/indicates"

The phrases "meteorological data indicative," "meteorological data indicating," and "meteorological data that indicates" appear in claims 7 and 21.  Claim 7 reads as follows:

> A system for providing weather event notifications, comprising:
>
> a plurality of remote units; and
>
> a weather event manager configured to respectively associate said remote units with different locations and to receive *meteorological data indicative* of an occurrence of a weather event, said *meteorological data indicating* an expected location of said occurrence, said weather event manager further configured to analyze said meteorological data and to automatically transmit, based on an analysis of said meteorological data by said weather event manager, a signal to one of said remote units that is associated with said expected location by said weather event manager,
>
> wherein said one remote unit is configured to communicate a

---

[71] Doc. no. 98 (P.R. 4-3 Joint Claim Construction and Prehearing Statement), at 9 (emphasis supplied).

weather notification in response to said signal.[72]

Claim 21 reads as follows:

> A method for providing weather event notifications, comprising the steps of:
>
> respectively associating a plurality of remote units with a plurality of locations;
>
> receiving *meteorological data that indicates* an occurrence of a weather event, said *meteorological data* including *data that indicates* an expected location of said occurrence;
>
> analyzing said meteorological data;
>
> automatically transmitting, based on said analyzing step, a signal to one of said remote units that is associated, via said associating step, with said expected location indicated by said meteorological data; and
>
> communicating a notification of said weather event, via said one remote unit, in response to said signal.[73]

There appears to be no dispute that the term "meteorological data" is equivalent to "weather information."  Rather, the dispute between the parties concerns the *type* of weather information contemplated by the claims, and the meaning of the words "indicative," "indicating," and "indicates."  As with the other terms in dispute, Baron believes the phrase is made up of common English words and should be given its plain meaning based on the language of the claims themselves, while WeatherCall's

---

[72] '525 Patent, at col. 10, *l.* 65 to col. 11, *l.* 13 (emphasis supplied).

[73] *Id.* at col. 12, *ll.* 28–42 (emphasis supplied).

construction adds limitations taken from the specification.

To "indicate" something is "to point out or point to or toward with more or less exactness." *Webster's Third New International Dictionary* (2002), at 1150.[74] Claims 7 and 21 both state that the meteorological data indicates two things: the "occurrence of a weather event," and, "the expected location of said occurrence."[75] In the context of the claims, "meteorological data" is the type of weather information that indicates those two things.

WeatherCall contends that the meteorological data in claims 7 and 21 must be data "regarding the current location and attributes of a weather event (*i.e.*, storm) from which the future location of the weather event can be derived or calculated," and it "does not encompass data defining the future location itself."[76]   WeatherCall's attempt to further limit the scope of "meteorological data," and to insert additional requirements for what the data must and must not contain, is contrary to the claim language and, again, improperly imports limitations from the specification.

WeatherCall's proposed construction is based on parts of the specification explaining that the meteorological data *may* include information about the attributes

---

[74] *See also* doc. no. 98-2 (P.R. 4-3 Joint Claim Construction and Prehearing Statement, Exhibit "B"), at ECF 14 (same).

[75] '525 Patent, at col. 11, *ll*. 3–5, col. 12, *ll*. 32–35.

[76] Doc. no. 98 (P.R. 4-3 Joint Claim Construction and Prehearing Statement), at 10.

of a storm, and that embodiments of the invention *may* include using the data to predict the storm's path.[77]  The specification does *not* state that the meteorological data *must* include information about specific storm attributes that would allow its future location to be derived or calculated, nor does it state that the data cannot define the future location itself.

The specification, instead, states that, in one embodiment, "the weather alert manager initially receives meteorological data *including weather information defining storms within a relevant geographical area*."[78]  That is consistent with the actual claim language, which provides that the meteorological data need only be of a type indicating the occurrence and expected location of a weather event. Weathercall's proposed limitations on the scope of the term "meteorological data" are contrary to the claim language and the rules for construing the claims.  *See Thorner v. Sony Computer Entertainment America LLC*, 669 F.3d 1362, 1367 (Fed. Cir. 2012) ("It is the claims that define the metes and bounds of the patentee's invention.  The patentee is free to choose a broad term and expect to obtain the full scope of its plain and ordinary meaning unless the patentee explicitly redefines the term or disavows its full scope." (citation omitted)); *see also Electro Medical Systems, S.A. v. Cooper*

---

[77] *See, e.g.*, '525 Patent, at col. 3, *ll*. 39–41 ("The weather alert manager *may* include means for predicting a path of the storm based upon the meteorological data." (emphasis supplied)).

[78] *Id.* at col. 9, *ll*. 60–64 (emphasis supplied).

*Life Sciences, Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994) ("[A]lthough the specifications may well indicate that certain embodiments are preferred, particular embodiments appearing in a specification will not be read into the claims when the claim language is broader than such embodiments.") (alteration supplied). Accordingly, the phrases are due to be given their plain and ordinary meaning, and WeatherCall's proposed construction is *rejected*.

## H.   "analyze/analyzing"

The terms "analyze" and "analyzing" appear in claims 7 and 21.  Claim 7 reads as follows:

> A system for providing weather event notifications, comprising:
>
> a plurality of remote units; and
>
> a weather event manager configured to respectively associate said remote units with different locations and to receive meteorological data indicative of an occurrence of a weather event, said meteorological data indicating an expected location of said occurrence, said weather event manager further configured to *analyze* said meteorological data and to automatically transmit, based on an *analysis* of said meteorological data by said weather event manager, a signal to one of said remote units that is associated with said expected location by said weather event manager,
>
> wherein said one remote unit is configured to communicate a weather notification in response to said signal.[79]

Claim 21 reads as follows:

---

[79] *Id.* at col. 10, *l.* 65 to col. 11, *l.* 13 (emphasis supplied).

> A method for providing weather event notifications, comprising the steps of:
>
> respectively associating a plurality of remote units with a plurality of locations;
>
> receiving meteorological data that indicates an occurrence of a weather event, said meteorological data including data that indicates an expected location of said occurrence;
>
> *analyzing* said meteorological data;
>
> automatically transmitting, based on said *analyzing* step, a signal to one of said remote units that is associated, via said associating step, with said expected location indicated by said meteorological data; and
>
> communicating a notification of said weather event, via said one remote unit, in response to said signal.[80]

As with the other terms in dispute, Baron believes that the terms should be given their plain and ordinary meanings, while WeatherCall argues that the terms require "predicting the future location of a weather event from the meteorological data and not simply retrieving that location from an existing warning or forecast."[81]

In claim 7, the word "analyze" is used to explain that meteorological data indicating the expected location of a weather event is communicated to those remote units associated with that location. The "analysis" that occurs is the association of specific remote units to the future location of a weather event, *not* the determination

---

[80] *Id.* at col. 12, *ll.* 28–42 (emphasis supplied).

[81] Doc. no. 98 (P.R. 4-3 Joint Claim Construction and Prehearing Statement), at 12.

of the future path of the weather event itself.  Similarly, in claim 21, the word "analyzing" is used to describe the "step" of associating specific remote units with the expected location of the weather event.

WeatherCall argues, however, that the claims instead require *predicting* the future location of a weather event, and that the claims exclude simply using the location already indicated by the meteorological data.  WeatherCall's proposed construction of the terms "analyze" and "analyzing" is substantively identical to its proposed construction of the terms "determination," "determine," and "determining." The reasons why such a construction is incorrect have already been addressed.[82] Accordingly, the terms should be given their plain and ordinary meaning, and WeatherCall's proposed constructions are *rejected*.

## I.    "expected location"

The phrase "expected location" appears in claims 7 and 21.  Claim 7 reads as follows:

> A system for providing weather event notifications, comprising:
>
> a plurality of remote units; and
>
> a weather event manager configured to respectively associate said remote units with different locations and to receive meteorological data indicative of an occurrence of a weather event, said meteorological data indicating an *expected location* of said occurrence, said weather event

---

[82] *See supra* Part II.C.

manager further configured to analyze said meteorological data and to automatically transmit, based on an analysis of said meteorological data by said weather event manager, a signal to one of said remote units that is associated with said *expected location* by said weather event manager,

wherein said one remote unit is configured to communicate a weather notification in response to said signal.[83]

Claim 21 reads as follows:

A method for providing weather event notifications, comprising the steps of:

respectively associating a plurality of remote units with a plurality of locations;

receiving meteorological data that indicates an occurrence of a weather event, said meteorological data including data that indicates an *expected location* of said occurrence;

analyzing said meteorological data;

automatically transmitting, based on said analyzing step, a signal to one of said remote units that is associated, via said associating step, with said *expected location* indicated by said meteorological data; and

communicating a notification of said weather event, via said one remote unit, in response to said signal.[84]

Baron believes the phrase should be given its ordinary meaning, while

WeatherCall contends that the phrase means "a location within the predicted future

---

[83] '525 Patent, at col. 10, *l.* 65 to col. 11, *l.* 13 (emphasis supplied).

[84] *Id.* at col. 12, *ll.* 28–42 (emphasis supplied).

path of the weather event."[85]

The dispute over the phrase "expected location" is the same as the dispute surrounding the phrases "geographic region of an impending weather event," "boundary of a weather region to be warned for," and "particular geographic region." Again, the phrase has a meaning so plain that no finder of fact could be assisted by an attempt to further construe it. Grafting onto the claims a requirement that there be a "predicted future path" of the weather event is contrary to the claim language, which permits reliance on an expected location already indicated by the meteorological data. Accordingly, the phrase will be given its plain and ordinary meaning, and WeatherCall's proposed construction is *rejected*.

## J.    "weather event data indicative"

Finally, the phrase "weather event data indicative" appears in claims 12 and 26. Claim 12 reads as follows:

> A system for distributing weather event notifications to at least one or more remote units, comprising:
>
> memory for storing geographic data representative of a geographic are[a], said geographic are[a] being partitioned into a plurality of regions; and
>
> a computer configured to receive weather event data from a data source, the *weather event data indicative* of the geographic boundary of a weather event to be warned for, said computer including a processor

---

[85] Doc. no. 98 (P.R. 4-3 Joint Claim Construction and Prehearing Statement), at 13.

38

instructed to compare said weather event data to said geographic data to determine which region or regions of said plurality of said regions is affected by said weather event and to transmit an activation signal to the one or more remote units located within said region or regions affected by said weather event.[86]

Claim 26 reads as follows:

A method for providing weather event notifications, comprising the steps of:

receiving *weather event data indicative* of a boundary of a weather event to be warned for;

comparing said weather event data to a geographic grid including a plurality of grid cells to determine which grid cell is affected by said event weather event [*sic*] data; and

transmitting an activation signal to at least one remote unit geographically located within a grid cell affected by said weather event data to automatically activate the at least one remote unit.[87]

Like most of the other disputed phrases, "weather event data indicative" consists of common English words that should be given their plain and commonly understood meanings. WeatherCall proposes the same construction for that phrase as it does for "meteorological data": *i.e.*, "data regarding the current location and attributes of a weather event (*i.e.*, storm) from which the future boundary of the weather event can be derived or calculated, and does not encompass data defining the

---

[86] '525 Patent at col. 11, *ll*. 35–50 (alteration and emphasis supplied).

[87] *Id.* at col. 12, *l*. 66 to col. 13, *l*. 10 (alteration and emphasis supplied).

future boundary itself."[88]  WeatherCall's proposed construction is not correct for the same reasons as those set forth in the discussion of "meteorological data" above,[89] and it is *rejected*.

In summary, it is ORDERED, ADJUDGED, and DECREED that the contested claim terms be, and the same hereby are, construed as follows:

### III.  CONSTRUCTION OF CLAIM TERMS FOR THE '525 PATENT

A.    The phrase "**contact identifiers/identify**" as used in claims 1, 10, 15, 16, 24, and 29 is construed as meaning "**a communication address, *e.g.*, telephone number, pager number, etc.**"

B.    The phrase "**remote unit**" as used in claims 1, 7, 12, 16, 21, and 26 is construed as meaning "**a device that receives remotely generated signals from a distribution network and provides weather event notifications to a user, *e.g.*, telephone, pager, etc.**"

C.    The term "**determination/determine/determining**" as used in claims 1, 12, 16, and 26 is to be given its plain and ordinary meaning.

D.    The phrase "**geographic region of an impending weather event**" as used in claim 1 is to be given its plain and ordinary meaning.

---

[88] Doc. no. 98 (P.R. 4-3 Joint Claim Construction and Prehearing Statement), at 15.

[89] *See supra* Part II.G.

**E.**      The phrase "**boundary of a weather event to be warned for**" as used in

claims 12 and 26 is to be given its plain and ordinary meaning.

**F.**      The phrase "**particular geographic region**" as used in claim 16 is to be given

its plain and ordinary meaning.

**G.**      The phrase "**meteorological data indicative/indicating/indicates**" as used in

claims 7 and 21 is to be given its plain and ordinary meaning.

**H.**      The term "**analyze/analyzing**" as used in claims 7 and 21 is to be given its

plain and ordinary meaning.

**I.**      The phrase "**expected location**" as used in claims 7 and 21 is to be given its

plain and ordinary meaning

**J.**      The phrase "**weather event data indicative**" as used in claims 12 and 26 is to

be given its plain and ordinary meaning.

DONE and ORDERED this 27th day of June, 2014

_____

United States District Judge